Birdwell-V v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-96-032-CR

Â Â Â Â Â VAUGHN BIRDWELL,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 95-324-C
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â A jury convicted Vaughn Birdwell of brutally stabbing Irene Mitchell to death and sentenced
him to life in prison. Birdwell now appeals his conviction claiming he was denied his
constitutional right to be tried by a jury of twelve peers. He contends a juror, who had felony
convictions, should have been disqualified. Additionally, Birdwell contends that he did not
receive a fair trial when the trial court denied his motion for mistrial following an outburst from
a member of the audience. Because we find that Birdwell received a fair trial by a jury of twelve
qualified citizens, we affirm his conviction.
Â Â Â Â Â Â In his first point of error, Birdwell claims that previous felony convictions disqualified one
of the twelve jurors. He disputes the constitutionality of articles 42.12 and 44.46 of the Texas
Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. arts. 42.12, 44.46 (Vernon Supp.
1997). Article 42.12, section 20, provides that a judge may set aside the verdict against a criminal
defendant and dismiss the charges that had been made against him once he successfully completes
a certain portion of his sentence of community supervision. Id. art. 42.12, Â§ 20(a). Article 44.46
requires a showing of significant harm by service of the disqualified juror to reverse a criminal
conviction when the disqualification was not discovered until after the verdict was entered. Id.
art. 44.46.
Â Â Â Â Â Â Juror "J.W." failed to disclose his felony convictions on his juror information card and failed
to respond to questions about his involvement in a prosecution. Subsequently, the trial court
impaneled J.W. as one of the twelve jurors in this case. However, the trial judge in J.W.'s
underlying felony trial had entered an order under article 42.12, section 20, to remove his
disability prior to being called to jury duty.
Â Â Â Â Â Â Birdwell relies upon the Fort Worth Court of Appeals to supply the backbone of his argument
that article 42.12, section 20, is unconstitutional. In that case, the court, sitting in its civil
capacity, held that only the executive branch has the constitutional authority to restore a convicted
felon's civil rights taken away as a result of a conviction. R.R.E. v. Glenn, 884 S.W.2d 189, 192-93 (Tex. App.âFort Worth 1994, writ denied). Thus, according to that court, the Legislature
cannot enact any statutes which permit either itself or the judiciary to restore a convicted felon's
civil rights. Id. at 193.
Â Â Â Â Â Â We have already rejected the holding in Glenn and found article 42.12, section 20,
constitutional. Hoffman v. State, 922 S.W.2d 663, 667-69 (Tex. App.âWaco 1996, pet. ref'd). 
Although Birdwell acknowledges Hoffman, he alleges we failed to consider other statutory
provisions which are designed to exclude convicted felons from serving on juries, the basic rules
of constitutional construction, and the meaning of "conviction." Because we believe Hoffman to
be correctly decided, we decline to reconsider its holding.
Â Â Â Â Â Â Article 42.12, section 20, provides a mechanism to release a convicted person of all legal
disabilities upon successful completion of community supervision. Wolfe v. State, 917 S.W.2d
270, 277 (Tex. Crim. App. 1996). The release from legal disabilities occurs after the trial judge
enters an order of discharge and dismisses the case. Id. Thus, a juror who has completed
community supervision, had his conviction set aside, or had the case dismissed is eligible to serve
as a juror. Walker v. State, 645 S.W.2d 294, 295 (Tex. Crim. App. 1983); Payton v. State, 572
S.W.2d 677, 679 (Tex. Crim. App. 1978): Smith v. State, 859 S.W.2d 463, 464 (Tex. App.âFort
Worth 1993, pet. ref'd); Day v. State, 784 S.W.2d 955, 956 (Tex. App.âFort Worth 1990, no
pet.). Because J.W. qualified as a juror in this case, there can be no harm to Birdwell. As such,
we do not address the harm needed to reverse a criminal conviction under article 44.46. We
overrule Birdwell's first point of error.
Â Â Â Â Â Â In his second point of error, Birdwell complains the trial court denied his right to a fair trial
when it overruled his request for a mistrial following an outburst from a member of the audience. 
While the medical examiner testified regarding the stab wounds inflicted upon Mitchell, Aurora
Victoria Shinehouer jumped from her seat, went to the rail separating the audience from counsels'
tables, and screamed vulgarities at Birdwell. Following this outburst, the trial judge instructed
the jury that they were not to consider this outburst for any reason. After the judge removed the
jury, he warned the audience that further outbursts would not be tolerated. At this point, Birdwell
made a motion for mistrial claiming that the outburst created an emotionally charged atmosphere. 
The judge overruled his motion and when the jury returned, again admonished them not to
consider the outburst for any reason.
Â Â Â Â Â Â Inappropriate comments by members of the audience do not result in error and certainly do
not result in reversible error unless and until Birdwell shows a reasonable probability that such
outbursts affected or interfered with the jury's verdict. Landry v. State, 706 S.W.2d 105, 112
(Tex. Crim. App. 1985); Boyd v. State, 774 S.W.2d 37, 42 (Tex. App.âBeaumont 1989, pet.
ref'd). Usually, any potential injury caused by the spectator's outbursts can be cured by the trial
court's unequivocal and dogmatic instruction to the jury. Boyd, 774 S.W.2d at 42; Nation v.
State, 762 S.W.2d 290, 292 (Tex. App.âBeaumont 1988, no pet.). Because curative instructions
are presumed efficacious to withdraw from jury consideration almost any evidence or argument
which is objectionable, trial conditions must be extreme before a mistrial is warranted under Texas
law. Bauder v. State, 921 S.W.2d 696, 700 (Tex. Crim. App. 1996). Injury to a defendant is
measured on a case-by-case basis. Landry, 706 S.W.2d at 112.
Â Â Â Â Â Â The judge immediately instructed the jury that it could not consider this profane outburst for
any reason. After the jury returned from its brief recess, the judge again instructed it not to
consider the outburst. The only reference to this outburst came from Birdwell's trial counsel when
he said "there is lots of emotions on each side, as you can tell"; the State did not make
Shinehouer's outburst any part of its case. Even though this outburst occurred in the presence of
the jury, we believe after a review of the whole record that the judge's immediate instructions
cured any potential harm. Bauder, 921 S.W.2d at 700. Therefore, we find that Birdwell failed
to show with a reasonable probability that the outburst affected or interfered with the jury's
verdict. Landry, 706 S.W.2d at 112; Boyd, 774 S.W.2d at 42. We overrule his second point of
error.
Â Â Â Â Â Â We affirm Birdwell's conviction.
Â 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â REX D. DAVIS
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Before Chief Justice Davis,
Â Â Â Â Â Â Â Â Â Â Justice Cummings, and
Â Â Â Â Â Â Â Â Â Â Justice Vance
Affirmed
Opinion delivered and filed January 22, 1997.
Do not publish



viction.  See id.; Muhammad, 540 U.S. at
754, 124 S.Ct. at 1306.Â  We sustain FernandezÂs first issue on this narrow
basis and proceed to address the remaining grounds raised in the motion to
dismiss.

Exhaustion of Remedies

Â Â Â Â Â Â Â Â Â Â Â  Fernandez claims in his
third issue that the trial court erred in dismissing his suit to the extent
that dismissal was based on the defendantsÂ assertion that he failed to exhaust
his administrative remedies.Â  The defendants assert that Fernandez failed to
exhaust available administrative remedies only with regard to his inverse-condemnation
claim.Â  They argued in the dismissal motion that he Ânever specifically grieved
the absence of just compensationÂ in his grievances.Â  However, an inmate need
not specify particular legal theories in his grievance.Â  Rather, the grievance
must provide prison officials with notice of the relevant Âoperative factsÂ that
serve as the basis for his complaint.Â  See Tex. GovÂt Code Ann. Â§ 501.008(d) (Vernon 2004); Brewer v.
Simental, 268 S.W.3d 763, 768-69 (Tex. App.ÂWaco 2008, no pet.) (citing Johnson
v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) (Âthe primary purpose of a grievance
is to alert prison officials to a problem, not to provide personal notice to a
particular official that he may be suedÂ)).

Â Â Â Â Â Â Â Â Â Â Â  In Johnson, the Fifth
Circuit similarly concluded that an inmate grievance need not specify the
particular legal theories that he may choose to allege in a subsequent
lawsuit.Â  Â[T]he purpose of the exhaustion requirement is to give prison
administrators an opportunity to address a problem, and they can do this
whether or not the prisoner tells them the constitutional provisions that the
problem implicates. Â Further, TDCJ rules specifically instruct inmates to
provide facts, not legal terminology.ÂÂ  Johnson, 385 F.3d at 518.Â  The
operative facts that the defendants allegedly seized property from Fernandez in
violation of his legal rights are clearly spelled out in his grievances.Â 
Nothing more was required.Â  See Brewer, 268 S.W.3d at 769.Â 
FernandezÂs third issue is sustained.

Arguable Basis in Law

Â Â Â Â Â Â Â Â Â Â Â  FernandezÂs sixth issue
asserts that the trial court erred by dismissing his suit as frivolous because
all his claims have an arguable basis in law and in fact.Â  His fifth issue asserts
that the trial court abused its discretion by dismissing his suit with
prejudice.

Â Â Â Â Â Â Â Â Â Â Â  A trial court may dismiss a
claim as frivolous under chapter 14 if Âthe claim has no arguable basis in law
or in fact.ÂÂ  See Tex. Civ. Prac.
& Rem. Code Ann. Â§ 14.003(a)(2), (b)(2) (Vernon 2002); Hamilton
v. Williams, 298 S.W.3d 334, 339 (Tex. App.ÂFort Worth 2009, pet. denied).Â 
ÂA claim has no arguable basis in law if it relies upon an indisputably
meritless legal theory.ÂÂ  Hamilton, 298 S.W.3d at 339.Â  When, as here,
there has been no fact hearing, our review is limited to the question of
whether the claim has an arguable basis in law.[4]Â 
Id.; Brewer, 268 S.W.3d at 770.Â  We
may affirm the dismissal if it was proper under any applicable legal theory.Â  Hamilton
v. Pechacek, 319 S.W.3d 801, 809 (Tex. App.ÂFort
Worth 2010, no pet.).Â  If the claim has no arguable basis in law, then
dismissal with prejudice is proper.Â  Hamilton, 298 S.W.3d at 340.

Â Â Â Â Â Â Â Â Â Â Â  Texas Tort Claims Act:
Â Fernandez asserts a claim against the defendants under section 101.021(2) of the
Texas Tort Claims Act, alleging that he suffered injury and loss of the seized
property that was caused by the defendantsÂ use and misuse of prison documents.Â 
See Tex. Civ. Prac. & Rem.
Code Ann. Â§ 101.021(2) (Vernon 2005) (ÂA governmental unit in the state
is liable forÂ  .Â  .Â  .Â  personal injury and death so caused by a condition or
use of tangible personal or real propertyÂ).

Â Â Â Â Â Â Â Â Â Â Â  Under section 101.021(2), a
governmental unit can be liable only for Âpersonal injuryÂ or Âdeath.ÂÂ  Id.; see Jones v. Tex. DepÂt of Crim. Just.-Inst. Div.,
318 S.W.3d 398, 404-05 (Tex. App.ÂWaco 2010, pet. denied).Â  Fernandez alleges
that he suffered property damage, not personal injury.Â  His claim under the
Texas Tort Claims Act has no arguable basis in law.Â  See Jones,
318 S.W.3d at 404-05.

Â Â Â Â Â Â Â Â Â Â Â  Due Process:Â  Fernandez
claims that defendants seized his property without due process of law in
violation of article I, section 19 of the Texas Constitution.Â  A prison
officialÂs wrongful seizure of property does not violate due process if an
adequate post-deprivation remedy is provided.Â  See Brewster v. Dretke,
587 F.3d 764, 768 (5th Cir. 2009).Â  Texas law provides at least two such
remedies: (1) the tort of conversion; id.; and (2) an administrative remedy under
sections 501.007 and 501.008 of the Government Code.Â  See Tex. GovÂt Code Ann. Â§Â§ 501.007,
501.008 (Vernon 2004); Pechacek, 319 S.W.3d at 814.Â  FernandezÂs due-process
claim has no arguable basis in law.

Â Â Â Â Â Â Â Â Â Â Â  AD-03.72: Fernandez asserts that AD-03.72 is unconstitutional because it has no
legitimate basis and does not Âserve any logical and penological interest.ÂÂ  He
also claims that AD-03.72 was enforced against him in an arbitrary and capricious
manner.Â  These assertions are claims that AD-03.72 is unconstitutional on its
face and that FernandezÂs right to equal protection was violated by the manner
in which the regulation was enforced.

Â Â Â Â Â Â Â Â Â Â Â  Â[W]hen a prison regulation
impinges on inmatesÂ constitutional rights, the regulation is valid if it is reasonably
related to legitimate penological interests.ÂÂ  Turner v. Safley, 482
U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); accord Williams v.
Lara, 52 S.W.3d 171, 193 (Tex. 2001).Â  The inmate bears the burden of
proving the invalidity of the challenged regulation.Â  Overton v. Bazzetta,
539 U.S. 126, 132, 123 S.Ct. 2162, 2168, 156 L.Ed.2d 162 (2003).

Â Â Â Â Â Â Â Â Â Â Â  We consider four factors in
deciding whether the regulation withstands constitutional challenge: (1)
whether the regulation has a Âvalid, rational connectionÂ to a legitimate
governmental interest; (2) whether alternative means are available to exercise
the asserted right; (3) what impact an accommodation of the right would have on
prison personnel and resources; and (4) whether Âready alternativesÂ to the
regulation exist.Â  Id.; Turner, 482 U.S. at 89-91, 107 S.Ct. at 2261-62.

Â Â Â Â Â Â Â Â Â Â Â  The defendants proffered
several interests that they contend AD-03.72 serves.Â  They note that this
regulation enhances inmate safety and diminishes the threat of inmate violence
by removing a de facto currency and by mitigating the hoarding of
materials that may pose a fire hazard.Â  In addition, they note that an inmate
who maintains possession of a commissary item for more than 60 days can procure
a new receipt from the commissary for that item.

Â Â Â Â Â Â Â Â Â Â Â  Fernandez offers limited
argument in response to these assertions.Â  He does not question the legitimacy
of the interests asserted by the defendants other than to deny that the
regulation serves any legitimate interest.Â  His claim that AD-03.72 serves no
legitimate penological interest has no arguable basis in law.Â  See Johnson
v. Tex. Bd. of Crim. Just., No. 07-20396, 2008 WL 5069357, at *1 (5th Cir.
Dec. 2, 2008) (rejecting inmateÂs challenge to constitutionality of
restrictions on storage space in AD-03.72).Â  However, FernandezÂs assertion
that AD-03.72 was enforced against him in an arbitrary and capricious manner
states an equal-protection claim with an arguable basis in law.Â  See Conway
v. Castro, No. 12-03-00373-CV, 2004 WL 1103584, at *3 (Tex. App.ÂTyler May
12, 2004, no pet.) (mem. op.).

Â Â Â Â Â Â Â Â Â Â Â  Inverse Condemnation:
Fernandez claims that his property was taken for a public use without just
compensation.Â  This is an inverse-condemnation claim.Â  See Sw. Bell
Tel., L.P. v. Harris County Toll Rd. Auth., 282 S.W.3d 59, 61 (Tex. 2009)
(ÂTo recover on an inverse-condemnation claim, a property owner must establish
that Â(1) the State intentionally performed certain acts, (2) that resulted in
a ÂtakingÂ of property, (3) for public use.ÂÂ) (quoting Gen. Servs. CommÂn
v. Little Tex Insulation Co., 39 S.W.3d 591, 598 (Tex. 2001)).Â  Specifically,
Fernandez asserts that his property was taken for a public use because AD-03.72
requires that seized property either be re-issued to another inmate or donated
to a charitable organization.Â  The disposition of seized property in
either fashion under AD-03.72 does not establish that the property was taken
for a public use.Â  See Tex. DepÂt of Crim. Just. v. Jackson, No.
01-07-00477-CV, 2008 WL 2209350, at *4-5 (Tex. App.ÂHouston [1st Dist.] May 29,
2008, no pet.) (mem. op.).Â  FernandezÂs inverse-condemnation claim has no
arguable basis in law.

Â Â Â Â Â Â Â Â Â Â Â  Conversion:Â 
Fernandez asserts that Reid and Barkin unlawfully converted his personal
property.

Â Â Â Â Â Â Â Â Â Â Â  To establish conversion of
personal property, a plaintiff must prove that: (1) the plaintiff owned or had
legal possession of the property or entitlement to possession; (2) the
defendant unlawfully and without authorization assumed and exercised dominion
and control over the property to the exclusion of, or inconsistent with, the
plaintiffÂs rights as an owner; and (3) the plaintiff suffered injury.Â  United
Mobile Networks, L.P. v. Deaton, 939 S.W.2d 146, 147-48 (Tex. 1997); Apple
Imports, Inc. v. Koole, 945 S.W.2d 895, 899 (Tex. App.ÂAustin 1997, pet.
denied).Â  If the defendant originally acquired possession of the plaintiffÂs
property legally, the plaintiff must establish that the defendant refused to
return the property after the plaintiff demanded its return.Â  Presley v.
Cooper, 155 Tex. 168, 284 S.W.2d 138, 141 (1955); Apple Imports, 945
S.W.2d at 899.

Â 

Lopez v. Lopez, 271 S.W.3d 780, 784 (Tex. App.ÂWaco 2008,
no pet.).

Â Â Â Â Â Â Â Â Â Â Â  Fernandez makes no allegation
or showing that Reid or Barkin has the power or duty to return wrongfully
seized property.Â  Accordingly, his conversion claim has no arguable basis in
law.Â  See Simmonds v. TDCJ, No. 10-07-00361-CV, 2010 WL 654498,
at *6 (Tex. App.ÂWaco Feb. 24, 2010, no pet.) (mem. op.).

Â Â Â Â Â Â Â Â Â Â Â  Section 1983:Â  Fernandez
makes various claims against the individual defendants under section 1983.Â  He
contends that Quarterman violated his rights Âby making or authorizing a policy
that he knew or should have known would cause offenders to be deprived of their
du[e] process right to own personal property.ÂÂ  He asserts that Brisher and
Johnson violated his rights by failing Âto stop the unlawful and
unconstitutional acts of [their] subordinates,Â by acquiescing in their
actions, and by providing false information to conceal the subordinatesÂ
alleged misconduct.Â  He similarly asserts that Curry violated his rights by
failing Âto stop unlawful acts of his subordinatesÂ and by acquiescing in their
actions.Â  He also claims that Curry violated his rights by denying him the
right to call witnesses and confront his accusers and by violating TDCJ
policies.Â  He asserts that Reid violated his rights by illegally confiscating
his property.Â  He contends that Barkin violated his rights by illegally
confiscating his property and by fraudulently completing the required TDCJ
paperwork.Â  And he contends that Hightower violated his rights by refusing to
return his property once he produced receipts for most of the seized items as
required by TDCJ policy.

Â Â Â Â Â Â Â Â Â Â Â  FernandezÂs section 1983
claim against Quarterman hinges on AD-03.72 being found unconstitutional.Â  We
have already concluded, however, that AD-03.72 is constitutional on its face
because it Âis reasonably
related to legitimate penological interests.ÂÂ  See Overton, 539 U.S. at
132, 123 S.Ct. at 2167; Turner, 482 U.S. at 89, 107 S.Ct. at 2261; Williams,
52 S.W.3d at 193.Â  Accordingly, this claim has no arguable basis in law.

Â Â Â Â Â Â Â Â Â Â Â  FernandezÂs section 1983
claims against Brisher, Johnson, Curry, Reid, Barkin, and Hightower all hinge
on their alleged failure to comply with various TDCJ policies regarding the
seizure of contraband and the conduct of disciplinary hearings.Â  Â[A] prison
officialÂs failure to follow the prisonÂs own policies, procedures or
regulations does not constitute a violation of due process, if constitutional
minima are nevertheless met.Â Â Brewster, 587 F.3d at 768 (quoting Myers
v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996)).Â  Fernandez has at least
two constitutionally adequate post-deprivation remedies: (1) the tort of conversion;
see id.; and (2) an administrative remedy under
sections 501.007 and 501.008 of the Government Code.Â  See Tex. GovÂt Code Ann. Â§Â§ 501.007,
501.008; Pechacek, 319 S.W.3d at 814.Â  Thus, his section 1983 claims
against the remaining defendants have no arguable basis in law.

Â Â Â Â Â Â Â Â Â Â Â  In conclusion, all of
FernandezÂs claims, except his equal-protection claim, have no arguable basis
in law. Â Aside from the equal-protection claim, the trial court did not abuse
its discretion in dismissing his claims with prejudice.Â  See Hamilton,
298 S.W.3d at 340.Â  We sustain in part and overrule in part FernandezÂs fifth
and sixth issues.

Opportunity to Amend

Â Â Â Â Â Â Â Â Â Â Â  Fernandez asserts in his fourth
issue that the trial court abused its discretion by failing to rule on his
motion for leave to amend his complaint to correct defects.Â  Dismissal with
prejudice is a ruling on the merits and is improper if based on procedural
defects that the inmate can correct.Â  Id.Â  But if the claim has no
arguable basis in law, then dismissal with prejudice is appropriate and no
opportunity to amend need be given.Â  See id.

Â Â Â Â Â Â Â Â Â Â Â  The trial court properly
dismissed all but the equal-protection claim with prejudice because the claims
have no arguable basis in law.Â  Accordingly, the trial court did not abuse its
discretion by failing to rule on FernandezÂs motion for leave to amend his
complaint.Â  FernandezÂs fourth issue is overruled.

Open Courts

Â Â Â Â Â Â Â Â Â Â Â  Fernandez claims in his
second issue that the trial court violated the open-courts provision of article
I, section 13 of the Texas Constitution by dismissing his claims, rather than
permitting him to have a jury trial.Â  Several courts have concluded that the
provisions of Chapter 14 do not violate the open-courts provision.Â  See Hughes
v. Massey, 65 S.W.3d 743, 745 (Tex. App.ÂBeaumont 2001, no pet.); Sanders
v. Palunsky, 36 S.W.3d 222, 226-27 (Tex. App.ÂHouston [14th Dist.] 2001, no
pet.); Thomas v. Bush, 23 S.W.3d 215, 218 (Tex. App.ÂBeaumont 2000, pet.
denied); see also Gowan v. Tex. DepÂt of Crim. Just., 99 S.W.3d 319, 323
(Tex. App.ÂTexarkana 2003, no pet.).Â  We agree and overrule FernandezÂs second
issue.

In conclusion, having sustained in part
FernandezÂs fifth and sixth issues, we reverse in part the trial courtÂs order dismissing
FernandezÂs suit as frivolous and remand this case for further proceedings.Â  We
otherwise affirm the trial courtÂs dismissal order.

Â 

Â 

REX D. DAVIS

Justice

Â 




Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

(Chief Justice Gray dissents.Â  A
separate opinion will not issue.Â  He notes, however, that he would affirm the
trial courtÂs judgment in its entirety and assess all appellate costs against
appellant.)

Affirmed in
part; reversed and remanded in part

Opinion
delivered and filed December 22, 2010

[CV06]









[1]
The TDCJ Disposition of Confiscated
Offender Property form indicates that Reid seized only 10 pot roasts, 37
packages of tuna, 19 packages of coffee, 16 packages of chili with beans, and 6
packages of chili without beans.Â  Fernandez disputes these numbers.





[2] The Disposition of Confiscated Offender
Property form reflects that the ÂReason for ConfiscationÂ of the items was
ÂOwnership Questioned,Â not ÂImproperly Stored.Â





[3]
The Court remanded the case for
reconsideration of the inmateÂs claims for prospective relief that did Ânot necessarily
imply the invalidity of a previous loss of good-time credits.ÂÂ  Edwards,
520 U.S. at 648-49, 117 S.Ct. at 1589.





[4]
The predominant focus of the
hearing on the defendantsÂ motion to dismiss FernandezÂs suit as frivolous was
on the defendantsÂ argument that FernandezÂs claims were barred by Heck v.
Humphrey.